UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2006 MAR -6  A 10: 07

|  |  |  |
|---|---|---|
| ANDREW LEWIS WILSON, | § |  |
| Petitioner/Defendant, | § | Criminal Action No.: 94-114-E |
| -vs- | § |  |
| UNITED STATES OF AMERICA, | § | 3. 06CV212 - TH |
| Respondent/Plaintiff. | § |  |
|  | § |  |

## PETITION FOR A WRIT OF HABEAS CORPUS[1]

NOW COMES ANDREW LEWIS WILSON, pro-se, hereinafter referred to as Petitioner, in the above-styled cause, pursuant to 28 U.S.C. §§ 2241 and 2255's "Savings Clause," and United States v. Booker, 125 S.Ct. 738 (2005)("Booker"), and hereby moves this Honorable Court to vacate, set aside, or correct sentence formerly imposed upon Petitioner premised upon the fact that said sentence violated Petitioner's Fifth and Sixth Amendments' rights to the United States Constitution as elucidated in Booker. In support whereby, Petitioner avers the following:

### I.    STATEMENT OF CLAIM

1) On May 3, 1994, along with 13 other defendants, Petitioner was originally indicted by a federal grand jury sitting for the Middle District of Alabama. (R1,1). This indictment was superseded on August 18, 1994. (R1,351). The August 18, 1994, superseding indictment was superseded on September 20, 1994, with a 25 count indictment. (R1,525). Count One charged all the defendants with knowingly combining, conspiring, confederating and agreeing together with each other

---

1.    Petitioner requests that the precepts enunciated in Haines v. Kerner, 404 U.S. 519, be applied to this cause with great emphasis.

1

and others to possess with intent to distribute and to distribute
cocaine and cocaine base in violation of Title 21, United States
Code, Section 841(a)(1), all in violation of Title 21, United States
Code, Section 846. Saliently, no specific drug quantity was ever
listed in Count One of the series of indictments.

2)  Following a jury trial that commenced on January 9, 1995,
Petitioner was eventually found guilty of Count One of the indict-
ment, which did not contain a specific drug quantity. The jury was
not specifically instructed to determine beyond a reasonable doubt
the drug quantity that could be attributable to Petitioner in the
event of conviction on the charges against him in trial. The jury
did not return a special verdict or explicit findings on the type and
drug quantity that could be attributable to Petitioner at sentencing.

3)  A Presentence Investigation Report ("PSR") was prepared by
the probation office.

4)  On March 8, 1996, at a resentencing, based upon a preponde-
rance of the evidence standard, the court made factual findings that
1.5 kilograms of cocaine base should be used in calculating the guide-
line range for Petitioner, and thus sentenced Petitioner to a term of
324 months imprisonment, a term of 10-years supervised release, and
a special assessment fee of $50.00. (R3,1000)

5)  The Court relied upon a drug quantity to sentence Petitioner
that was neither alleged in the indictment nor deliberated and proved
by the jury beyond a reasonable doubt. The sentence imposed upon Peti-
tioner included and necessarily involved an increase in his maximum
statutory sentence based upon facts not alleged in the indictment,
nor deliberated and proved by the jury beyond a reasonable doubt.
Because the 1.5 kilograms or more of cocaine that was used to increase

2

Petitioner's sentence was not charged in the indictment, nor delibe-
rated and proved by the jury beyond a reasonable doubt, Petitioner
was not facing more than a statutory maximum sentence of 20 years'
imprisonment, without any mandatory minimum whatsoever, and three
years' supervised release under 21 U.S.C. § 841(b)(1)(C).

Petitioner was convicted of conspiring to possess with intent
to distribute and to distribute a controlled substance, cocaine base -
21 U.S.C. § 846.[2] Section 841(a)(1) provides that "it shall be unlaw-
ful for any person knowingly or intentionally...to manufacture, dis-
tribute, or dispense, or possess with the intent to manufacture, dis-
tribute, or dispense, a controlled substance." Section 841(b) governs
the sentence of defendants convicted of violating § 841(a). For the
purposes of the instant case, three subsections of § 841(b) are rele-
vant, (b)(1)(A), (b)(1)(B), and (b)(1)(C). Sections 841(b)(1)(A) and
(b)(1)(B) provide a range of statutory minimum and maximum sentences
triggered by the amount of drugs involved in the offense. Section
841(b)(1)(A) applies in cases involving five kilograms or more of
cocaine or 50 grams or more of cocaine base, and it mandates a mini-
mum sentence of 10 years and a maximum sentence of life. Section
841(b)(1)(B) applies in cases involving 500 grams or more of cocaine
or five grams or more of cocaine base, and it mandates a minimum sen-
tence of five years and a maximum sentence of 40 years. Section 841
(b)(1)(C), on the other hand, applies to cases where the amount of
drugs is not specified, and it provides for a maximum sentence of 20
years.[3] The probation office concluded that §841(b)(1)(B) applies in

---

2.    Section 846 provides that "[a]ny person who attempts or conspires to commit any
offense defined in this subchapter shall be subject to the same penalties as those
prescribed for the offense, the commission of which was the object of the attempt or
conspiracy." The subchapter to which § 846 refers is § 841, so the case law interpret-
ing § 841 applies equally to § 846. United States v. Sanchez, 269 F.3d 1250,1264 n.21 (11th Cir. 2001)(en banc).
3.    See 841(b)(1)(C) is some sometime referred to as the "catch-all provision."
Sanchez, 269 F.3d at 1265 n.26.

3

Petitioner's case based on its conclusion that the evidence showed that 1.5 kilograms of cocaine base should be attributed to Petitioner.

In _Apprendi_, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362. The United States Court of Appeals for the Eleventh Circuit has explained _Apprendi_'s impact on § 841(b) this way: "In light of _Apprendi_, there is constitutional error in a defendant's sentencing procedures when drug quantity increases a defendant's sentence beyond the prescribed statutory maximum. Under § 841(b)(1)(C), unless it was submitted to a jury and proven beyond a reasonable doubt." _United States v. Sanchez_, 269 F.3d 1250, 1270 (11th Cir. 2001)(en banc). In other words, the Eleventh Circuit treats the 20-year maximum sentence in § 841(b)(1)(C) as the "prescribed statutory maximum" for § 841(b)(1) as a whole, and thus, before a court can sentence a defendant to more than 20 years under either (b)(1)(A) or (b)(1)(B), the necessary quantity of drugs must have been determined by the jury beyond a reasonable doubt.

It is clear from the trial record in this case that the jury made no finding as to drug quantity. The trial Court's charge to the jury did not mention drug quantity, and the jury's verdict similarly did not mention drug quantity,[4] as previously mentioned in ¶ 2 above. Because the issue of drug quantity in Petitioner's case was neither presented to the jury nor found by the jury beyond a reasonable doubt, the maximum term to which the Court can sentence Petitioner under the rule of _Apprendi_ and _Sanchez_ is 20 years pursuant to § 841(b)(1)(C)

---

4.   See Transcript of closing arguments, jury charge, and verdict, January 11, 1995.

4

In <u>United States v. Salery</u>, 119 F.Supp.2d 1268 (M.D. Ala. 2000) (Albritton, J.), the court addressed a similar claim. The defendants had been convicted of conspiring to violate § 841(a)(1), and the probation office recommended sentencing them under §841(b)(1)(A), based on its conclusion that the defendants' offenses each involved more than 50 grams of cocaine base. 119 F.Supp.2d at 1270. However, the jury in the case had not made a finding about the amount of drugs involved. <u>Id</u> at 1071. The court held that, under <u>Apprendi</u>, the defendants could not be sentenced under § 841(b)(1)(A), but rather had to be sentenced under § 841(b)(1)(C). <u>Id</u>. at 1272-73.[5] The same is true in this case; Petitioner must be sentenced under § 841(b)(1)(C), which provides a maximum sentence of 20 years. Therefore, even if the Sentencing Guidelines table calls for a longer sentence based on Petitioner's offense level and criminal list category, Petitioner's sentence can be no more than 20 years, the statutory maximum. U.S.S.G. § 5G1.1(a).

6) On January 12, 2005, the Supreme Court announced its decision in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), finding certain provisions of the Federal Sentencing Act of 1994, 18 U.S.C. § 3551 <u>et seq</u>, unconstitutional. The court first held that the Guidelines violated the defendant's Sixth Amendment right to a jury trial because they require trial judges to find facts which in turn increase a defendant's sentence beyond what could be imposed based solely on the jury's verdict. <u>Booker</u>, 125 S.Ct. at 755-56. In the second part of the decision, the court considered whether the unconstitutional portions of the Guidelines could be severed and the rest of the statutory scheme preserved. The court held that by severing the two provisions in the Act

---

5.    The United States Court of Appeals for the Eleventh Circuit has repeatedly come to the same conclusion as the court did in <u>Salery</u>, <u>United States v. Acevado</u>, 285 F.3d 1010, 1012 (11th Cir. 2002)("sentencing a defendant in excess of 20 years...without a jury determination of drug quantity constitutes plain error."); <u>United States v. Novaton</u>, 271 F.3d 968, 1016 (11th Cir. 2001); <u>United States v. Candelario</u>, 240 F.3d 1300, 1309 (11th Cir. 2001).

that make the guidelines mandatory, the rest of the federal senten-
cing scheme could be preserved. Specifically, the court held that
U.S.C. § 3553(b) and 18 U.S.C. § 3742(e) were "incompatible with today's
constitutional holding." Booker, 125 S.Ct. 757. The former provision
stated that court's shall impose a sentence...within the range esta-
blished by the guidelines. 18 U.S.C. § 3553(b)(1). The later provision
mandated a de novo standard of review - a standard which, according
to the court, "depends upon the guidelines' mandatory nature. Booker,
125 S.Ct. at 757. "So modified," the court continued, "the Federal
Sentencing Act...makes the guidelines effectively advisory." Id.

    7) Under the teachings of Booker, at the time of conviction and sentenc-
ing, the district court counsel for Petitioner and the government were operating
under a constitutionally flawed interpretation of the Federal Sentencing Act.

    8) Under the teachings of Booker, at the time of conviction and sentenc-
the district court failed to treat the Sentencing Guidelines as ad-
visory in determining Petitioner's sentence. The record of the in-
stant case shows that the district court was operating under the presumption -
which was apparently correct at the time but incorrect in the light
of Booker - that the guidelines were mandatory in that it could
determine the type and amount of drugs that could be attributable to
Petitioner and the aggravating enhancement factors that could be used
to enhance Petitioner's drug quantity sentence by a preponderance of
the evidence, even though the drug amount and the aggravating factors
were not alleged in the indictment, nor deliberated and proved by
the jury beyond a reasonable doubt.

    9) Had the district court known at the time of Petitioner's
sentencing that sentencing the Petitioner on judge-found facts by
a preponderance of the evidence would violate the Petitioner's
Fifth and Sixth Amendments rights to jury trial and due process
of law as outlined in Booker, there is a reasonable proba-
bility that it would have sentenced Petitioner under 21 U.S.C. §

6

841(b)(1)(C), the default statutory maximum of zero to 20 years
that federal courts have invoked where the type and drug amount
was not charged in the indictment, proved and decided by the
jury beyond a reasonable doubt.  See United States v. Rogers,
228 F.3d 1318, 1327 (11th Cir. 2000) abrogated on other grounds
by United States v. Sanchez, 269 F.3d 1250 (11th Cir. 2001);
United States v. Thomas, 274 F.3d 655 (2d Cir. 2001)(en banc);
United States v. Doggett, 230 F.3d 160, 164-65 (5th Cir. 2000).

   10) During Petitioner's sentencing hearing, Petitioner
had no real opportunity to present arguments relevant to many
factors set forth in 18 U.S.C. § 3553(a), which now must be
considered by the district court under the advisory Guideline
scheme.  See also 18 U.S.C. § 3661.

   11) Moreover, when a judge sentences under the erroneous
pre-Booker understanding that the Sentencing Guidelines were
mandatory and constrained judge's discretion, that judge sentenced
based upon an erroneous and material assumption and with no awareness
of discretionary sentencing alternative under advisory Guidelines,
in violation of due process.  The Supreme Court held that imposition
of sentence by a judge or jury not aware of discretionary sentencing
alternative, violates due process.  Hicks v. Oklahoma, 447 U.S.
343 (1980); Andrew v. Jones, 743 F.2d 306, 308 (5th Cir. 1984);
Prater v. Maggio, 686 F.2d 346 (5th Cir. 1982).  See also Booker,
125 S.Ct. at 798 n.6 (Thomas, J., dissenting in part)(stating
that the Court's holding in Booker corrects the Sentencing Commis-
sion's mistaken belief set out in U.S.S.G. § 6A1.3, p.s., that
the preponderance of the evidence standard is appropriate to

meet due process requirements — ("[t]he Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by a jury or admitted by defendant."). The Due Process Clause is implicated whenever a judge determines a fact by a standard other than "beyond a reasonable doubt" if that factual finding would increase the punishment above that fact. Id. at 754-55; Apprendi v. New Jersey, 530 U.S. 466, 494 (2000).

12 )  A defendant who raises genuine issue as to sentencing judge's knowledge and understanding of range of sentencing discretion is entitled to a hearing. Hicks, supra; Andrews, supra; Prater, supra.

The Booker error constitutes structural error which affected the framework within which Petitioner's  sentencing proceeded, including the sentencing court's assumption that the Guidelines' sentencing determination by a preponderance of the evidence as opposed to the jury beyond a reasonable doubt; the advocacy of Petitioner's  counsel, and the exercise of the sentencing court, which focused narrowly on the mandatory sentencing Guidelines application, rather than the broader sentencing issues and sentencing discretion — now available for consideration under 18 U.S.C. §§ 3553(a) and 3661 — constitutes structural error which is not amenable to harmless error analysis.

13)  The Booker decision applies retroactively to Petitioner's case on collateral review because it was sufficiently within the scope of then existing jurisprudence at the time of the

8

Petitioner's sentence to consider authorities dictated by precedent; Therefore, not barred by Teague v. Lane, 489 U.S. 288, 311 (1989) non-retroactivity doctrine.

14) The Booker decision applies retroactively to Petitioner's case on collateral review because the Booker court was interpreting what the legislature intended when the Federal Sentencing Act was enacted; therefore, its exempt from the Teague non-retroactivity doctrine.

15) Although Petitioner raised his Booker claim in a second or successive application, the Eleventh Circuit Court of Appeals denied the application on the ground that the Booker decision is neither a new constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, nor newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by a clear and convincing evidence that no reasonable factfinder would have found Petitioner guilty of the alleged offenses.

16) The law existing at the time of Petitioner's conviction and sentence foreclosed Petitioner's Booker claim. Therefore, Petitioner could not raise his Booker claim during his original sentencing proceeding, direct appeal, and initial § 2255 motion.

17) The Booker error constitutes a fundamental defect which inherently results in a complete miscarriage of justice in that Petitioner's presumptive sentence was enhanced by drug quantity and aggravating factors that were not charged in the indictment, nor deliberated and proved by the jury beyond a reasonable doubt. In that, but for the violation as outlined in Booker, Petitioner would not have received the 324-months sentence, 84 months in excess of the statutorily authorized sentence of 20

years under 21 U.S.C. § 841(B)(1)(C) courts have invoked when the drug amount and aggravating factors that were relied upon to sentence a defendant were not alleged in the indictment, nor proved and decided by the jury beyond a reasonable doubt.  See Rogers, 228 F.3d at 1327; Thomas, 274 F.3d at 663.

18) Petitioner   is presently incarcerated at the Federal Correctional Institution, Talladega, Alabama, serving the sentence heretofore imposed.

## II.    THE DISTRICT COURT CAN MAKE RETROACTIVITY DECISION

19)  It is clear that a district court can make a retro-activity decision based on a new Supreme Court's decision that applies retroactively on collateral review.  See Dodd v. United States, 365 V.3d 1273, 1278 (11th Cir. 2004).

## III.    THE BOOKER DECISION WAS DICTATED BY THE SIXTH AMENDMENT, WINSHIP, GAUDIN, JONES, APPRENDI, RING, AND BLAKELY; THEREFORE, DOES NOT CONSTITUTE A NEW CONSTITUTIONAL LAW FOR PURPOSES OF TEAGUE NON-RETROACTIVITY DOCTRINE

20)  The Booker decision was dictated by the Sixth Amendment, In re Winship, 397 U.S. 358, 364 (1970); United States v. Gaudin, 515 U.S. 506, 511 (1995); Jones v. United States, 526 U.S. 227, 230 (1999); Apprendi v. New Jersey, 530 U.S. 466 (2000); Ring v. Arizona, 536 U.S. 574 (2002); and Blakely v. Washington, 542 U.S.____ (2004).  Therefore, does not constitute a new consti-tutional law for purposes of Teague v. Lane, 489 U.S. 288 (1989) non-retroactivity analysis.  The Booker decision is applicable in habeas corpus proceedings to those defendants whose convictions and sentences became final after the Supreme Court's decision in Winship, Gaudin, Jones, Apprendi, Ring, and Blakely.

As a general matter, federal courts may not apply a new
Supreme Court's decision on collateral proceedings if to do
so would create a "new rule" of constitutional law, subject
to two narrow exceptions of <u>Teague</u>.[6]  Subject to the two exceptions
of <u>Teague</u>, a case decided after a habeas petitioner's conviction
and sentence became final may not be the predicate for habeas
relief unless the petitioner meet either of the two narrow excep-
tions of <u>Teague</u>.   There is an exception to this general principle
however, where the new Supreme Court's decision was dictated
by constitutional procedural principles that was pre-existing
at the time the petitioner's conviction and sentence became
final.  <u>Penry v. Lynaugh</u>, 492 U.S. 302, 316-317 (1989)(recognizing
that the application of established general constitutional procedural
principles in an analagous context is not a new rule barred
by <u>Teague</u>); <u>Stringer v. Blacks</u>, 503 U.S. 222 (1992)(no new rule
established where prior case's rule "emerges not from any single
case.... but from our longline of authority" on matter and,
despite differences in the petitioner's case, the result petitioner
seeks "follows <u>a fortiori</u> from the earlier case"); <u>United States
v. Johnson</u>, 457 U.S. 537, 549 (1982)("[W]hen a decision of this
Court merely has applied settled precedents to new and different
factual situations, no real question has arisen as to whether

_____

6.  Under <u>Teague</u>, a "new rule" should be applied retroactively if 1) "it
plac[es] certain kind of primary, private individuals conduct beyond the
power of the criminal lawmaking authority to proscribe," or 2) it is a "watershed
rule [] of criminal procedure, implicating the fundamental fairness and
accuracy of the criminal proceeding." <u>Teague</u>, 489 U.S. at 311.

the later decision should apply retrospectively.  In such cases, it has been a foregone conclusion that the rule of the later decision has not in fact altered that rule in any material way.").  See also Truesdale v. Aiken, 480 U.S. 527 (1987)(per curiam); Dunaway v. New York, 442 U.S. 200 (1979); Lee v. Missouri, 439 U.S. 461, 452 (1979)(per curiam).  The Supreme Court has held both Winship and certain extensions of Winship to be fully retro-active.  E.g. Hankerson v. North Carolina, 432 U.S. 233, 242-44 (1977); Ivan v. City of New York, 407 U.S. 203, 204-05 (1972).

"In determining whether [] prisoner is entitled to habeas relief, a federal court should apply Teague by proceeding in three steps."  Caspari v. Bohlen, 510 U.S. 383, 390 (1994).

> First, we must determine when [petitioner's] convic-
> tion and sentence became final for Teague purposes...
> Second, we must "survey the landscape as it then existed
> and determine whether a [] court considering [peti-
> tioner's claim at the time his conviction became final
> would have felt compelled by existing precedent to
> conclude that the rule he seeks was required by the
> Constitution."...Third, if we determine that [peti-
> tioner] seeks the benefit of a new rule, we must
> consider whether "that rule falls within...the....
> narrow exceptions to the non-retroactivity principle."

Caspari, 510 U.S. at 390.

Applying the first step of Teague to the instant case, it is undisputed that Petitioner's   conviction became final in 1999   See Caspari, 510 U.S. at 390; Teague, 489 U.S. at 295(holding that a case is "final" when the judgment of conviction was rend-ered, the availability of appeal exhausted, and the time for petition for Certiorari had elapsed).

Applying Teague's second step, the district court in 1999 would have felt compelled by the Supreme Court precedents in Winship and its progeny, to conclude that the Sixth Amendment,

Winship and its progeny prohibit judges from making a finding,
by a preponderance of the evidence, that raises a defendant's
sentence beyond the sentence that would have lawfully been imposed
by reference to facts proven and found by the jury beyond a
reasonable doubt or admitted by the defendant. Booker, 543
U.S. at____ (Slip op., at 5). Because Booker application of
Sixth Amendment principles firmly established by 1999 compel
that Petitioner   be sentenced solely on the facts determined
by the jury beyond a reasonable doubt, the rule set forth in
Booker he now seeks to benefit from is not new, and hence not
barred by Teague.

   In Teague, a plurality of the Supreme Court espoused Justice
Harlan's view of retroactivity that a new rule of law would
not be applied on collateral reveiw to cases that became final
prior to the announcement of the new rule. Teague, the Court
has clarified that this principle of non-retroactivity serves
to ensure that gradual developments in the law over which reasonable
jurists may disagree are not later used to upset the finality
of convictions valid when entered. Sawyer v. Smith, 497 U.S.
227 (1990). Moreover, the rule reflects the limited purpose
of federal habeas corpus "to ensure that [] convictions comply
with the federal law in existence at the time the conviction
became final, and not provide a mechanism for the continuing
reexamination of final judgments based upon later emerging legal
doctrine." Id.

   Applying the non-retroactivity principle in a way that balances
the need for finality of convictions against the need to enforce
minimal constitutional protections has proven challenging. Even

in _Teague_ the court acknowledged that the task of determining whether a case announces a new rule is often difficult. For that reason, the _Teague_ court expressly did not "attempt to define the spectrum of what may or may not constitute a new rule" for purposes of retroactivity. _Teague_, 489 U.S. at 301; _See also_ _Mackey v. United States_, 401 U.S. 667, 695 (1971)(Harlan, J., concurring in judgments and dissenting in part)(recognizing "the ineveitable difficulties that will arise in attempting to determine whether a particular decision has really announced a "new" rule at all or whether it has simply applied a well established constitutional principle to govern a case which is closely analagous to those which have been previously considered in the prior case law"). The _Teague_ court, however, offers the following general guidelines:

> "[A] case announces a new rule when it breaks new ground or imposes a heretofore new obligation on the states or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the petitioner's conviction became final."

_Id._ (emphasis in original)  A majority of the court employed these guidelines shortly after _Teague_ in _Penry v. Lynaugh_, 492 U.S. 302, 316 (1989).  In _Penry_ the majority of the court adopted _Teague's_ non-retroactivity doctrine. _See id._  Thus, the analysis in _Penry_ is instructive with respect to the distinction between a new rule under _Teague_ and an application of established principles to a case that is analagous to prior precedent.

Penry claims that his Eighth Amendment rights were violated because the jury in his capital murder trial was unbale to fully consider and give effect to mitigating evidence of his mental

14

retardation and childhood abuse when answering Texas' three statu-
tory special issues at sentencing.  Penry did not facially challenge
the Texas death penalty statute.  Instead, Penry claimed that,
"on the facts of [his] case, the jury was unable to fully consider
and give effect to the mitigating evidence....in answering the
three special issues."  492 U.S. at 315 (emphasis added).  The
State argued that Penry's asserted rule amounted to an extension
of established principles and consequently was barred by Teague.
The court was thus faced with determining whether the rule asserted
by Penry was an application of established principles or a new
rule of law.

Prior to 1986, when Penry's conviction and sentence became
final, the Supreme Court had established that "in capital cases
the fundamental respect for humanity underlying the Eighth Amend-
ment requires consideration of the character and record of the
individual offender and the circumstances of the particular
offense as a constitutionally indispensable part of the process
of inflicting the penalty of death."  See Penry,492 U.S. at
316 (quoting Woodsen v. North Carolina, 428 U.S. 280, 304 (1976).
The Court had stressed this fundamanetal principle in upholding
Texas' capital punishment statute against a facial Eighth Amendment
challenge in Jurek v. Texas, 428 U.S. 262 (1976).  In Jurek,
the court concluded that Texas' sentencing scheme satisfied
the Eighth Amendment provided that sentencing juries were allowed
to consider any mitigating circumstances relevant to a specific
case.  Jurek, 428 U.S. at 272.  Supreme Court decisions subsequent
to Jurek and Woodsen, but prior to Penry's conviction becoming
final, reaffirmed the need for an individualized assessment

of the appropriateness of the death penalty under the Eighth
Amendment.  See Lockett v. Ohio, 438 U.S. 586 (1978); Eddings
v. Oklahoma, 455 U.S. 104 (1982)(both concluding that a sentencer
cannot be precluded from considering and giving effect to relevant
mitigating circumstances when determining the appropriateness
of the death penalty in a particular case).  At the same time,
however, no Supreme Court decisions prior to Penry had commanded
courts to instruct juries how to consider specific mitigating
evidence in a particular case.  Instead, the case law established
fundamental Eighth Amendment principles for application in analogous
case.

     The Supreme Court concluded that despite the absence of
a specific holding requiring the instruction sought by Penry,
the rule Penry sought to benefit from was dictated by the Eighth
Amendment principles espoused and enforced in the Court's prior
cases.  According to the Court, it was firmly established at
the time of Penry's conviction that a sentencer in Texas had
to consider any mitigating evidence specific to that circumstances
of Penry and his crime.  Penry, 492 U.S. at 317.  The rule Penry
sought --- a requirement that the jury be instructed specifically
what mitigating evidence it should consider and how it should
consider that evidence when answering Texas' special issues----
was not "new" for the purposes of Teague because it represented
a specific application of general cases.  Though Penry's claim
for relief did require the State to issue specific instructions
that it previously had not issued, the rule which controlled
Penry's case was nevertheless not new.  Moreover, the rule did
not impose a new obligation on Texas, it simply required that

Texas fulfill its obligation, expressed in Jurek, to ensure "that the special issues of Texas capital punishment statute would be interpreted broadly enough to permit the sentencer to consider all of the relevant mitigating evidence a defendant might present in imposing sentence." Id.

Penry's recognition that the application of established general constitutional principles in an analogous context is not a new rule barred by Teague in part because ("there is surely nothing new about this principle...."); see also Wright v. West, 505 U.S. 277, 304 (1992)(O'Connor, J., concurring)("if a preferred factual distinction between the case under consideration and pre-existing precedent's underlying principles apply, the distinction is not meaningful, and any deviation from precedent is not reasonable").

Just as Penry sought an application of Eighth Amendment principles well-established at the time of his conviction became final, Petitioner  now seeks the application of Sixth Amendment principles that were well-established at the time that his conviction became final.  Just as Teague did not prevent Penry from receiving the benefit of established Eighth Amendment protections, it should not prevent Petitioner  from receiving the benefit of established Sixth Amendment protection as interpreted in Booker.

In the instant case, at the time  Petitioner's conviction became final in 1999  it was well established in the legal landscape that defendants have the Sixth Amendment right that a judge may impose sentence based solely on the facts reflected in the jury verdict or admitted by the defendant.  In Booker, the Supreme

Court applied the Sixth Amendment principles set forth in <u>Winship</u>,
<u>Gaudin</u>, <u>Jones</u>, <u>Apprendi</u>, <u>Ring</u>, and <u>Blakely</u>, to the federal sent-
encing act. It did not create a new constitutional rule of
criminal procedure; rather, it applied an existing one. Put
another way, the determination that federal district judges
have been improperly enhancing defendant's sentences based on
facts not proven and found by the jury beyond a reasonable doubt
or admitted by defendant within the meaning of Sixth Amendment,
<u>Winship</u>, <u>Gaudin</u>, <u>Jones</u>, <u>Apprendi</u>, <u>Ring</u>, and <u>Blakely</u> did not
establish a new rule of criminal procedure. The <u>Booker</u> court
made this clear at the outset of its decision:

> It has been settled throughout our history that the
> Constitution protects every criminal defendant "against
> conviction except upon proof beyond a reasonable doubt
> of every fact necessary to constitute the crime with
> which he is charged." In re <u>Winship</u>, 397 U.S. 358, 364,
> (1970). It is equally clear that the "Constitution
> gives a criminal defendant the right to demand that
> a jury find him guilty of all elements of the crime
> with which he is charged," <u>United States v. Gaudin</u>,
> 515 U.S. 506, 511 (1995). These basic precepts,
> firmly rooted in the common law, have provided the
> basis for recent decisions interpreting modern crimi-
> nal statutes and sentencing procedure.
>     In <u>Jones v. United States</u>, 526 U.S. 224, 230 (1999),
> we considered the federal carjacking statute, which
> provides three different maximum sentences depending on
> the extent of harm to the victim, 15 years in jail if
> there was no serious injury to a victim, 25 years if
> there was "serious bodily injury," and life in prison
> if death resulted. 18 U.S.C. § 2119 (1998 ed., Supp.
> V). In spite of the fact that the statute "at first
> glance has a look to it suggesting [that the provi-
> sions relating to the extent of harm to the victim]
> are only sentencing provisions," 526 U.S. at 232, we
> concluded that the harm to the victim was an element
> of the crime. That conclusion was supported by the
> statutory text and structure, and was influenced by
> our desire to avoid the constitutional issues impli-
> cated by a contrary holding, which would have reduced
> the jury's role "to the relative importance of low-
> level gate keeping." <u>Id.</u>, at 244. Foreshadowing
> the result we reach today, we noted that our holding
> was consistent with a "rule requiring jury determination

of facts that raise a sentencing ceiling" in state and federal sentencing guidelines systems. Id., at 251, n.11.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the defendant pleaded guilty to second degree possession of a firearm for an unlawful purpose, which carried a prison term of 5-to-10 years. Thereafter, the trial court found that his conduct had violated New Jersey's "hate crime" law because it was racially motivated, and imposed a 12 year sentence. This court set aside the enhanced sentence. We held: "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, proved beyond a reasonable doubt." Id., at 490. As a matter of simple justice, it seemed obvious that the procedural safeguards designed to protect Apprendi from punishment for the possession of a firearm should apply equally to his violation of the hate crime statute. Merely using the label "sentence enhancement" to describe the latter did not prove a principled basis for treating the two crimes differently. Id., at 476.

In Ring v. Arizona, 536 U.S. 574 (2002), we reaffirmed our conclusion that the characterization of critical facts is constitutionally irrelevant. There, we held that it was impermissible for "the trial judge, sitting alone:  to determine the presence or absence of the aggravating factors required by Arizona law for imposition of the death penalty. Id., at 588,589. "If a state makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact----no matter how the state labels it----must be found by a jury beyond a reasonable doubt." Id., at 602. Our opinion made it clear that ultimately, while the procedural error in Ring's case might have been harmless because the necessary finding was implicit in the jury's guilty verdict, id., at 609, n.7. "The characterization of a fact or circumstances as an 'element' or a 'sentencing factor' is not determination of the question 'who decides,' judge or jury," Id., at 605.

In Blakely v. Washington, 542 U.S. ____(2004), we dealt with a determinate sentencing scheme similar to the Federal Guidelines. There the defendant pleaded guilty to kidnapping, a class B felony punishable by a term of not more than 10 years. Other provisions of Washington law, comparable to the Federal Sentencing Guidelines, mandated a "standard" sentence of 49-to-53 months, unless the judge found aggravating facts justifying an exceptional sentence. Although the prosecutor recommended a sentence in the standard range, the judge found that the defendant had acted with "deliberate cruelty" and sentenced him to 90 months. Id., at____)slip op., at 3).

For reason explained in <u>Jones</u>, <u>Apprendi</u>, and
<u>Ring</u>, the requirements of the Sixth Amendment were
clear.  The application of Washington's sentencing
scheme violated the defendant's right to have the
jury find the existence of "any particular fact"
that the law makes essential to his punishment.
542 U.S.____(slip op., at 5).  That right is impli-
cated whenever a judge seeks to impose a sentence
that is not solely based on "facts reflected in the
jury verdict or admitted by the defendant." <u>Id.</u>,
at____(slip op., at 7)(emphasis deleted).  We reject
the state's argument that the jury verdict was suf-
ficient to authorize a sentence within the general
10 year sentence for class B felonies, noting that
under Washington law, the judge was <u>required</u> to find
additional facts in order to impose the greater 90-
month sentence.  Our precedents, we explained, make
clear "that the 'statutory maximums' for <u>Apprendi</u>
purpose is the maximum sentence a judge may impose
<u>solely on the basis of</u> the facts reflected in <u>the</u>
<u>jury verdict or admitted by the defendant.</u>" <u>Ibid.</u>(slip
op., at 7)(emphasis in original).  The determination
that the defendant acted with deliberate cruelty,
like the determination in <u>Apprendi</u> that the defendant
acted with racial malice, increased the sentence that
the defendant could have otherwise received.  Since
this fact was found by a judge using a preponderance
of the evidence standard, the sentence violated
<u>Blakely's</u> Sixth Amendment rights.

<u>Booker</u>, 543 U.S.____(slip op., at 5-9).  Based on the foregoing

reasons, despite the absence of a specific holding requiring

that Petitioner  be sentenced solely on the facts found by

the jury beyond a reasonable doubt, the Sixth Amendment principles

were espoused and enforced in the Court's prior cases.  It was

firmly established at the time of Petitioner's  conviction

that Sixth Amendment --- the <u>Winship</u> reasonable doubt standard

protects the defendant's liberty interest in being free from

unjustified loss of liberty --- protects the defendant's interest

from being sentenced based on facts determined by a district

judge, sitting alone, by a preponderance of the evidence.

Therefore, the <u>Booker's</u> application of firmly established Sixth

Amendment's constitutional procedural principles may be applied

to Petitioner's    case without violating the principle of <u>Teague</u>
based on the Supreme Court's teachings in <u>Penry</u>.    <u>Id</u>.[7]    <u>See</u>
<u>also</u> <u>Stringer</u>, 503 U.S. at 230-31 (giving retroactive effect
to the Court's decision in <u>Clemons v. Mississippi</u>, 494 U.S.
738, 741, despite the fact that several pre-Clemons lower court
opinions held contrary    <u>Clemons</u>,[8] <u>Truesdale</u>, <u>Id</u>.; <u>Dunaway</u>,
<u>Id</u>.; <u>Lee</u>, <u>Id</u>.

IV.    THE <u>BOOKER</u> DECISION IS AN INTERPRETATION OF
THE FEDERAL SENTENCING ACT; THEREFORE, EXEMPT
FROM <u>TEAGUE</u> NON-RETROACTIVITY DOCTRINE

21)    The <u>Booker</u> decision is applicable to Petitioner's
case as an interpretation of the federal sentencing act and
as a substantive change from mandatory sentencing scheme to
advisory.

While all of the foregoing analysis and cases set forth
in section III clearly support    Petitioner's    contention that
<u>Booker</u> decision does not constitute a new constitutional law,
authorities also exist to support the application of <u>Booker</u>
decision in Petitioner's    case as an interpretation of federal
sentencing    act.    This is because in applying its Sixth Amend-
ment holding to the federal sentencing act the Court found that

--------

7.    By analogy, federal courts routinely entertain the application of estab-
lished law to different facts in reviewing the constitutionality of searches
and seizures of evidence admitted in federal criminal proceedings.    If <u>Teague</u>
were an issue, no one would seriously contend that such cases involve new
rules, even though law officers may be entitled to qualified immunity from
civil liability because reasonable jurists could disagree about the constitu-
tionality of a particular application of a Fourth Amendment rule.    <u>See</u> <u>Anderson</u>
<u>v. Creighton</u>, 483 U.S. 635 (1987).    The Court has drawn upon <u>Anderson</u> for treat-
ment of the level of generality, not its reasonableness in application of a
settled rule.    <u>See</u> <u>Sawyer v. Smith</u>, 497 U.S. 227, 236 (1990).

8.    The purpose of collateral relief under § 2255 is identical to that of
the habeas writ generally.    <u>See</u> <u>Davis v. United States</u>, 417 U.S. 333, 343 (1974).

21

portions of the federal sentencing act are incompatible with

its Sixth Amendment holding.  The Court modified the federal

sentencing act nunc pro tunc to their November 1, 1987 effective

date.

> We answer the question of remedy by finding the pro-
> vision of the federal sentencing statute that makes
> the Guidelines mandatory, 18 U.S.C.A. § 3553(b)(1)
> (Supp. 2004), incompatible with today's constitutional
> holding.  We conclude that this provision must be severed
> and excised, as must other statutory section, § 3742(e)
> (main ed. and Supp. 2004), which depends upon the Federal
> Sentencing Act, see Sentencing Reform Act of 1984, as
> amended 18 U.S.C. § 991 et seq., makes the Guidelines
> effectively advisory.

Booker, 543 U.S., at____(Remedy slip op., at 2).  The Supreme

Court's analysis was similar to the Court's analysis in Bousley

v. United States, 523 U.S. 614 (1998) "[B]ecause Teague by its

terms applies only to procedural rules, we think it is inapplicable

to the situation to which this Court decides the meaning of

a criminal statute enacted by Congress."  Id., at 620.  Accord

Robinson v. United states, 196 F.3d 748, 752 (7th Cir. 1999)

("[I]n Bousley v. United States, [supra], the Supreme Court

made it clear that Teague's retroactivity bar applies only to

new rule of criminal procedure, not to changes in substantive

law").  Bousley applied this reasoning to find the Teague doctrine

inapplicable to a section 2255 movant's reliance on Bailey v.

United States, 516 U.S. 137 (1995), an intervening decision

construing a sentencing enhancement provision in 18 U.S.C. §

924(c) (1994).[9]  See also Schriro v. Summerlin, 124 S.Ct. 2519,

---

9.    United States v. Guardino, 972 F.2d 682, 687 n.7 (6th Cir. 1992)(noting
that Teague does not bar the retroactive application of a new authoritative
interpretation of the Victim and Witness Protection Act that would in affect
diminish defendant's sentence); Callahan v. United States, 881 F.2d 229,
. (continued)

22

would be applied retroactively, as amendment purported to clarify Guidelines):

2522 (2004)("New substantive rule generally apply retroactively [on collateral review].  This includes decisions that narrow the scope of a criminal statute by interpreting its terms").  The rationale behind such policy begins with the idea that " a statute, under our system of separate powers of government, can have only one meaning."  Brough v. United States, 454 F.2d 370, 373 (7th Cir. 1972)(emphasis added); accord Bousley, 523 U.S. at 620-21 ("[U]nder our federal system it is only Congress, and not the courts, which make conduct criminal."  In other words, when a court interprets the scope of an existing criminal statute, that interpretation effectively serves as a declaration of what the statute has always meant.  Gates v. United States, 515 F.2d 73, 78 (7th Cir. 1975).

Likewise, the Booker decision was similar to the Supreme Court's decision in United States v. Jackson, 390 U.S. 570 (1968),

---

9. (continued) - 232 n.1 (6th Cir. 1989), cert. denied, 494 U.S. 1083 (1990) (Teague "addresses only the retroactivity of 'new constitutional rule of criminal procedure' and thus does not control "cases involving new rules of substantive criminal law); Lanier v. United States, 220 F.3d 833, 838 (7th Cir. 2000)(noting defendant was entitled, even on collateral review, to the benefit of court's interpretation of a term in 21 U.S.C. § 848 made after defendant's conviction had became final).  United States v. Talk, 158 F.3d 1064, 1071 (10th Cir. 1998), cert. denied, 525 U.S. 1164 (1999)(relying on Bousley v. United States, supra, in concluding that Teague plainly applies only to rules that are both "new and constitutional" and therefore deeming Teague inapplicable to claim based on Supreme Court ruling on statutory standard for appellate review of Sentencing Guidelines downward departure, given that rule is "not constitutional" and also is not "new" because it merely clarified what statute has always required); United States v. Stinson, 30 f.3d 121, 122 (11th Cir. 1994)(Amendment to Sentencing Guidelines commentary which excluded offense of being felon in possession of firearm from "crime of violence" category for determining career offender status would be applied retroactively, as amendment purported to clarify Guidelines); United States v. Garcia-Cruz, 40 F.3d 986, 988 (9th Cir. 1994)(same); Oliver v. United States, 90 F.3d 177, 179 (6th Cir. 1996)(Teague does not bar the retroactive application of new case interpreting the federal sentencing guidelines)

there, the Court held that the death penalty provision of the
Federal Kidnapping Act, 18 U.S.C. § 1202(a), was unconstitutional
by making the offense of kidnapping punishable by death only
upon the recommendation of the jury, inadvertently failed to
provide for the infliction of the death penalty upon those who
plead guilty or waive a jury trial. The death penalty provision
was invalidated because it imposed an impermissible burden upon
an accused's exercise of his Fifth Amendment right mot to plead
guilty and his Sixth Amendment right to demand a jury trial,
but that the remainder of the statute was valid. Since the
death penalty was "severable" from the rest of the statute,
the Court upheld the validity of the Act after excising the
death penalty provision. In Natale v. United States, 424 F.2d
725, 727 (9th Cir. 1970), the court held that the Supreme Court's
decision in Jackson, supra, is to be applied retroactively on
collateral review, because under the interpretation, the death
penalty provisions of 18 U.S.C. § 1201(a) have been unconstitutional
since the time of first enactment in 1934, and not just since
April 18, 1968, the date the Supreme Court decided Jackson.

Similar rationale was applied in Patterson v. McLean Credit
Union, 491 U.S. 164 (1989) when the Supreme Court interpreted
a 123-year old statute differently than appellate courts had
done since its enactment. As to Patterson's retroactivity the
Court said:

> A judicial construction of a statute is an authori-
> tative statement of what the statute meant before
> as well as after the decision of the case giving
> rise to that construction[.] Thus, Patterson
> provides the authoritative interpretation of the
> phrase "make and enforce contracts" in the Civil
> Rights Act of 1866 before the "Congressional]

1991 amendment [overruling Patterson] went into
effect on November 21, 1991.  [Patterson's] inter-
pretation provides the base line for our conclusion
that the 1991 amendment would be "retroactive"
if applied to cases arising before that date.

Rivers v. Roadway Express, 511 U.S. 298, 313 (1994).

Based on all the foregoing reasons, Booker decision is

not barred by Teague.

> V.    Petitioner's  SENTENCE IS VIOLATIVE OF HIS
> SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO
> JURY TRIAL BECAUSE THE 1.5 KILOGRAMS OR MORE
> OF COCAINE AND THE MINOR PARTICIPANT AGGRAVATING
> FACTORS THAT WERE USED TO ENHANCE HIS SENTENCE
> ABOVE THE STATUTORILY AUTHORIZED MAXIMUM WERE
> NOT ALLEGED IN THE INDICTMENT, PROVED AND
> DETERMINED BY THE JURY BEYOND A REASONABLE DOUBT

22)  Petitioner  incorporates the facts, pleadings, and

allegations set forth in paragraphs 1- 21 herein.

23)  Petitioner   contends that the 324 months' sentence

heretofore imposed upon him under the mandatory Guidelines regime

is violative of his Sixth Amendment constitutional right to

jury trial.  This is because the district court relied on 1.5

Kilograms or more of cocaine and aggravating factors for a minor

role that were not alleged in the indictment, proved and decided

by the jury beyond a reasonable doubt to impose a sentence that

is  seven  whole  years longer than the statutorily authorized

maximum sentence of 20 years when the drug amount and aggravating

factors for a minor participant were not charged in the indictment,

proved and decided by the jury beyond a reasonable doubt.  See

Booker, 125 S.Ct. at 755; Apprendi, 530 U.S. 490; Rogers, 228

F.3d at 1327.

24)  Based on the foregoing reasons, Petitioner  has demonstrated

that his present sentence exceeded the statutorily authorized

maximum sentence by approximately seven(7) years, warranting
a resentencing.

VI. PETITIONER'S    SENTENCE IS VIOLATIVE OF
HIS FIFTH AMENDMENT CONSTITUTIONAL RIGHT TO
DUE PROCESS OF LAW BECAUSE THE DISTRICT COURT,
COUNSEL, AND PROSECUTOR WERE OPERATING UNDER A
CONSTITUTIONALLY FLAWED INTERPRETATION OF
THE FEDERAL SENTENCING ACT.

26) Petitioner    incorporates the facts, pleadings, and
allegations set forth in paragraphs 1-25 herein.

27) Petitioner    contends that the 324 months' sentence
heretofore imposed upon him under the mandatory Guidelines regime
is violative of his Fifth Amendment constitutional right to
due process of law.  This is because at his sentencing the district
court, counsel, and prosecutor were operating under a constitutionally
flawed interpretation of the Federal Sentencing Act.  The district
court, counsel, and prosecutor failed to treat the Sentencing
Guidelines as advisory and were not aware of the available range
of sentencing discretion under advisory Guidelines regime. Peti-
tioner    had no real opportunity to present arguments relevant
to many factors set forth in 18 U.S.C. §§ 3553(a) and 3661.
The district court, counsel, and prosecutor erroneously believed
that the district court could determine sentencing facts and
aggravating factors by a preponderance of the evidence.  The
district court failed to treat the 1.5 Kilograms of cocaine
that was attributed to Petitioner    as an element of the offense
that must be charged in the indictment, proved and decided by
the jury beyond a reasonable doubt.

28) The Booker teachings created a liberty interest in having
sentencing facts and aggravating factors that would be relied

26

upon to impose a sentence in excess of the statutory maximum of 20 years be alleged in the indictment, proved and decided by the jury beyond a reasonable doubt. Petitioner was deprived of this interest at his sentencing, a deprivation so serious that subsequent determination of the sentencing facts and aggravating factors by the district court, by a preponderance of the evidence, cannot cure this violation. The district court's use of an improper legal standard contaminated the whole sentencing process.

29) The Supreme Court has recognized that when law creates for a defendant a liberty interest in having a jury make particular findings beyond a reasonable doubt, a subsequent district court's finding will not suffice for due process purposes. See Clemons v. Mississippi, 494 U.S. 738, 746 (1990). The Supreme Court has further recognized that due process requires the sentencing judge or jury be aware of all discretionary sentencing alternatives. Hicks, supra.

30) A defendant claiming a due process violation under Hicks must establish: (1) the sentencing authority either (a) did not make the sentencing decision or (b) lacked knowledge of the available range of sentencing discretion under applicable law, and (2) a "substantial possibility" of resulting prejudice to the defendant. Id.

31) Petitioner contends that he met all Hicks requirements. Petitioner has pleaded that the 1.5 Kilograms or more of cocaine and the aggravating factors for a minor role that were used to impose the 324 months sentence upon him were not alleged in the indictment, proved and decided by the jury beyond a reasonable doubt. That the district court, counsel, and prosecutor lacked

27

knowledge of the available range of sentencing discretion under
Booker's advisory regime.  That the district court, counsel,
and prosecutor were operating under a constitutionally flawed
interpretation of the Federal Sentencing Act (mandatory regime).
That the district court, counsel, and prosecutor erroneously
believed that the district court could make sentencing determi-
nation by a preponderance of the evidence standard.  That he
was substantially prejudiced because he was deprived of his
liberty interest to be sentenced based on the facts and aggravating
factors that were alleged in the indictment, proved and decided
by the jury beyond a reasonable doubt.  That he was substantially
prejudiced because his present sentence exceeds the statutory
maximum sentence applicable to his case by realistically seven  (7)
years.

> VII.    THE ENHANCEMENT OF PETITIONER'S SENTENCE
> ABOVE THE STATUTORILY AUTHORIZED MAXIMUM
> BASED ON FACTS AND AGGRAVATING FACTORS
> THAT WERE NOT ALLEGED IN THE INDICTMENT,
> PROVED AND DECIDED BY THE JURY BEYOND A
> REASONABLE DOUBT  CONSTITUTES A FUNDAMENTAL
> DEFECT AND A COMPLETE MISCARRIAGE OF JUSTICE

32)  Petitioner  incorporates the facts, pleadings and
allegations set forth in paragraphs 1- 31 herein.

33)  In Booker, the Supreme Court made clear "that the
'statutory maximum' for Apprendi purpose is the maximum sentence
a judge may impose solely on the basis of the facts reflected
in the jury verdict or admitted by the defendant." Booker,
125 S.Ct. at 755-56.

34)  Petitioner  contends that under Apprendi the maximum
sentence he was facing is twenty(20) years.  This is because

the 1.5 Kilograms or more of cocaine and the aggravating enhancement
factors for minor participant was not alleged in the indictment,
proved and decided by the jury beyond a reasonable doubt. This
district court did not instruct the jury to make a determination
of the 1.5 Kilograms or more of cocaine and the aggravating
factors beyond a reasonable doubt. Federal courts following
Apprendi rule have unanimously concluded that if, in a crime
charged pursuant to 21 U.S.C. § 841, the type and quantity of
drugs and aggravating enhancement factors involved may be used
to impose a sentence above the statutory maximum for an indetermi-
nate quantity of drugs, then the type and quantity is an element
of § 841 offense that must be charged in the indictment, proved
and decided by the jury beyond a reasonable doubt. And that
if the drug quantity that is used to determine the defendant's
sentence is not charged in the indictment, proved and determined
by the jury beyond a reasonable doubt, the default statutory
maximum of 20 years would be the maximum guidelines sentence.
Rogers, 228 F.3d at 1327; Thomas, 274 F.3d at 663; Doggett,
230 F.3d 164-65; U.S.S.G. § 5G1.1(a). Petitioner's    sentence
is 324 months' imprisonment, 84 months longer than the statutory
maximum sentence authorized under statute of conviction. Because
Petitioner's    sentence exceeds the statutorily authorized maximum
sentence under statute of conviction by 84 months, . Petitioner
is actually innocent of the extra 84 months sentence he received.

   35)  In Schlup v. Delo, 513 U.S. 298 (1995), the United
States Supreme Court reaffirmed the principle that "habeas corpus
is, at its core, an equitable remedy." Schlup, 513 U.S. at
319. Given  this basic principle, the Supreme Court has long

29

recognized the duty of a district court to adjudicate procedurally defaulted habeas corpus claims when failure to do so would result in a "fundamental miscarriage of justice." Id. at 320-21 (citing Sawyer v. Whitley, 505 U.S. 333, 339-40 (1992); McCleskey v. Zant, 499 U.S. 467, 495 (1991); Smith v. Murray, 477 U.S. 527, 537 (1986); Murray v. Carrier, 477 U.S. 478, 495-95 (1986); Kuhlmann v. Wilson, 477 U.S. 436, 562 (1986); Engle v. Isaac, 456 U.S. 107, 135 (1982).

In order to demonstrate fundamental miscarriage of justice a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 334; Murray, 477 U.S. at 495-96.  While the "actual innocence" exception was initially formulated in the context of the crime of conviction, the Supreme Court has applied that exception also to capital sentencing determinations. See e.g. Sawyer, 505 U.S. at 339; Smith, 477 U.S. at 537; Dugger v. Adams, 489 U.S. 401, 410-12 n.6 (1986).  The Supreme Court has noted that actual innocence exception reserved for cases of "actual as opposed to legal innocence." Sawyer, 505 U.S. at 339.  The Sawyer court made clear that "actual innocence did not mean innocence of the crime charged."  In that case, the Court applied the actual innocence exception although the petitioner was concededly guilty of the underlying crime.  Sawyer explained that actual innocence in the sentencing context focuses on the elements that render a defendant eligible for the particular penalty.  Id. at 347.

Following Sawyer's logic other federal courts have applied actual innocence to non-capital cases.  See United States v.

Maybeck, 23 F.3d 888, 893 (4th Cir. (1994)(finding no difference
between holding defendant innocent of acts required to enhance
a sentence of death case and parallel rationale in non-capital
cases); Jones v. Arkansas, 929 F.2d 373, 381 n.6 (8th Cir. 1990)
(ruling that a defendant was actually innocent of a habitual
offender provision that did not apply to him); Pilchak v. Camper,
935 F.2d 145 (8th Cir. 1991)(stating that the Eighth Circuit
"while recognizing that the [actual innocence] exception...is
very narrow, has transported the exception into the sentencing
phase of a trial" in case involving petitioner not properly
the subject of life sentence because represented by mentally
impaired counsel); Mills v. Jordan, 979 F.2d 1273, 1279 (7th
Cir. 1992)("The question in Sawyer was not whether the petitioner
was innocent of the murder for which he was convicted, but rather
whether he was innocent of the aggravating factors upon which
his death sentence was based")(emphasis added); Smith v. Collins,
977 F.2d 931, 959 (5th Cir. 1991)("[F]or a defendant to demonstrate
actual innocence of the sentence imposed he would have to show
that but for the constitutional error he would not have been
legally eligible for the sentence he received.")(emphasis added);
Great Meadow Corr. Facility, 219 F.3d 162, 170-71 (2d Cir. 2000)
("[T]he availability of the 'actual innocence exception depends
not on the nature of the penalty' the State imposes, but on
whether the constitutional error 'undermining the accuracy of
the guilt or sentencing determination.'"); Simpson v. Matesonz,
175 F.3d 200, 202 (1st Cir. 1999)(discussing application of
actual innocence in non-capital case).

36) Applying the Sawyer's logic to the facts of the instant case, Petitioner contends that he has demonstrated by clear and convincing evidence that but for the Booker/Apprendi violation, he would not have received the 324 months sentence he is now serving, 84 months above the statutory maximum that would have applied in his case. Id. See Jones, 929 F.2d at 381 n.6 (holding that defendant was actually innocent of a habitual offender provision that did not apply to him); Maybeck, 23 F.3d at 893(same).

37) Based on all the foregoing reasons, Petitioner should be resentenced.

VIII.  MANDATORY NATURE OF THE FEDERAL SENTENCING ACT,
       CIRCUIT LAW, AND SUPREME COURT"S DECISION
       FORECLOSED BOOKER CLAIM AT THE TIME OF PETI-
       TIONER'S CONVICTION, SENTENCE, DIRECT APPEAL,
       AND FIRST MOTION TO VACATE, 28 U.S.C. § 2255.

38) Petitioner incorporates the facts, pleadings and allegations set forth in paragraphs 1-42 herein.

39) Petitioner contends that the mandatory nature of the Federal Sentencing Act, Circuit Law, and Supreme Court's decision foreclosed Booker claim at the time of his conviction, sentence, direct appeal, and initial § 2255 motion. At the time of Petitioner's conviction, sentence, direct appeal, and initial § 2255 motion, sentencing determination in federal court must be made through the use of U.S.S.G. promulgated by the United States Sentencing Commission purusant to the Sentencing Reform Act of 1984. 18 U.S.C. §§ 3551-3672, 28 U.S.C. §§ 991-998. The sentencing judges were required to impose a guideline sentence and to apply a preponderance of the evidence standard in determining the sentencing and enhancement facts. Id. After Booker, Sentencing Guidelines are no longer mandatory in nature, Circuit Law and

Supreme Court's decision no longer require the sentencing judges
to apply preponderance of the evidence standard in determining
sentencing facts and aggravating factors for enhancement purposes.
The sentencing facts and aggravating factors must be proven
and determined by the jury beyond a reasonable doubt or admitted
by defendant. <u>Booker</u>, 125 S.Ct. 738.

IX.    STATEMENT RELATIVE TO JURISDICTION

40) Petitioner   incorporates the facts, pleadings and
allegations set forth in paragraphs 1-39 herein.

41) Petitioner   contends that jurisdiction lies in this
Court to entertain, rule on the merits of Petitioner's motion,
and to grant the relief requested under the "savings clause"
of 28 U.S.C. § 2255.

Section 2255 provides in relevant part:

> An application for a Writ of Habeas Corpus in behalf
> of a prisoner who is authorized to apply for relief,
> by motion pursuant to this section, shall not be
> entertained if it appears that the applicant has
> failed to apply for relief, by motion, to the
> court which sentenced him, or that such court
> has denied him relief, <u>unless it also appears</u>
> <u>that the remedy by motion is inadequate or ineffec-</u>
> <u>tive to test the legality of his detention.</u>

28 U.S.C. § 2255.  The emphsaized language is sometimes referred
to as the "savings clause." <u>Bridges v, Vasquez</u>, 151 F.Supp.2d
1353, 1356 (N.D.Fla. 2003).

The Eleventh Circuit has formulated test for the "savings
clause."  In <u>Wofford v. Scott</u>, 177 F.3d 1236, 1238 (11th Cir.
1999), the Eleventh Circuit held that prior to seeking relief
using a § 2241'a "savings clause," petitioner must first demon-
strate that a § 2255 motion would be inadequate or ineffective.
<u>Id</u>.  To demonstrate that § 2255 motion would be inadequate or

33

ineffective to test the legality of detention:    (1)   the claim must be based upon a retroactively applicable Supreme Court decision; (2)   the holding of that Supreme Court decision establishes the petitioner convicted for a non-existent offense; and (3)   circuit law squarely foreclosed such action at the time it otherwise should have been raised in petitioner's trial, appeal, or first § 2255 motion.    Wofford, 177 F.3d at 1244. The Court made clear "that the only sentencing claims that may be covered by the 'savings clause' are those based upon retroactively applicable Supreme Court decision overturning Circuit precedent."   Id. at 1244-45.

Other circuits have formulated test for "savings clause." Some addressed the issue in the context of Bailey claim.   See e.g., In re Davenport, 147 F.3d 605 (7th Cir. 1998).   "A federal prisoner should be permitted to seek habeas relief only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first § 2255 motion.   Davenport, 147 F.3d at 611.   This is subject to three qualifications (1)   'the change of law has to have been made retroactive by the Supreme Court.'   Id.   (2)   '[I]t must be a change that eludes the permission in section 2255 for successive motion.'   Id.   (3)   "[C]hange in law is not to be equated to a difference between the law in the circuit in which he was incarcerated."   Id. at 612.   Triestman v. United States, 124 F.3d 361 (2d Cir. 1997).   The second circuit devised it's savings clause test based on whether failure to permit a remedy would "raise serious constitutional questions." Triestman, 124 F.3d at 377.   Whenever a judge believes "justice

34

would seem to demand a forum for the prisoner's claim in so
pressing a fashion as to cast doubt on the constitutionality
of the law that would ban the § 2255 petition, the prisoner
would be permitted access to habeas writs." See id. at 378.
In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997). Section 2255's
savings clause is available for "a prisoner who had no earlier
opportunity to challenge his conviction for a crime that an
intervening change in substantive law may negate." Dorsainvil,
119 F.3d at 251. In re Jones, 226 F.3d 328 (4th Cir. 2000).
The "savings clause" of 28 U.S.C. § 2255 may give the court
jurisdiction to hear the merit of a claim to correct fundamental
error in the criminal process based on a new Supreme Court decision
if the petitioner can demonstrate that he could not have raised
the issue supported by the new Supreme Court decision at the
time he filed his first motion to vacate, 28 U.S.C. § 2255:
that the new Supreme Court decision neither qualified as a new
rule of constitutional law made retroactive by the Supreme Court
nor newly discovered evidence, that if proven and viewed in
light of the evidence as a whole would be sufficient to establish
by clear and convincing evidence that no reasonable factfinder
would have found the petitoner guilty of the offense. In re
Hanserd, 123 F.3d 922 (6th Cir. 1997). "A [federal] prisoner
barred by res judicata would seem as a consequence to have an
'inadequate or ineffective' remedy under § 2255 and thus be
entitled to proceed in federal habeas corpus." Hanserd, 123
F.3d at 930 (alteration in original)(internal quotations omitted)
(quoting in parenthetical Sanders v. United States, 373 U.S.
1, 14-15 (1963).

At least three(3) circuits permitted a petitioner, who was otherwise barred from filing a second or successive § 2255 motion to vacate to assert a claim challenging his conviction under § 2241, concluding that the § 2255 remedy was inadequate or ineffective to correct an apparent fundamental miscarriage of justice. See Davenport, 147 F.3d at 251-52. The Davenport, Triestman, and Dorsainvil cases concerned claims made by petitioners in the wake of the Supreme Court's decision in Bailey v. United States, 516 U.S. 137 (1995). Bailey addressed the proper interpretation of 18 U.S.C. § 924(c)(1) which punishes anyone who uses or carries a firearm during or in relation to a drug trafficking crime. The Supreme Court in Bailey interpreted the "use" prong of the statute narrowly to require active employment of the firearm, an interpretation different from the one that had been adopted by a number of federal appeals courts. See id. at 142. As a result, prisoner who had been convicted under an erroneous interpretation of § 924(c)(1), or who thought they had been, collaterally attacked their convictions as inconsistent with Bailey.

To file a second or successive § 2255 motion to vacate a sentence in the district court, a prisoner must obtain an order from the appropriate court of appeals authorizing the district court to consider such a motion. See 28 U.S.C. §§ 2244(b)(3)(A), 2255. The Court of Appeals may grant such authorization to a federal prisoner only if it determines that the motion contains a claim involving:

> (1) newly discovered evidence that, if proven and viewed as a whole, would be sufficient to establish by a clear and convincing evidence that no reasonable

36

factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Id. § 2255.

Since the Bailey decision was not a "new rule of constitutional law," prisoners who did not have newly discovered evidence but wanted to collaterally attack their convictions as inconsistent with Bailey in a second or successive § 2255 petition were effectively barred from doing so. See Davenport, 147 F.3d at 608-09; Triestman, 124 F.3d at 370-71; and Dorsainvil, 119 F.3d at 250-51. The Davenport, Triestman, and Dorsainvil courts permitted such prisoners to circumvent § 2244 using § 2241 "savings clause," on the ground that the § 2255 remedy was "inadequate or ineffective." See Davenport 147 F.3d at 611-12; Triestman, 124 F.3d at 377-80; Dorsainvil, 119 F.3d at 251-52.

42)  In the instant case, Petitioner  contends that just like in Bailey, the Booker decision is not a "new rule of constitutional law and not a newly discovered evidence." Therefore, does not meet the requirement of second or successive petition under §§ 2244 and 2255.  Petitioner  has pleaded that the Booker decision was dictated by existing precedent and therefore, exempt from Teague non-retroactivity doctrine.  That the Booker decision was a clarification of the Federal Sentencing Act and therefore, exempt from Teague non-retroactivity doctrine.  See Davenport, 147 F.3d at 611 (Bailey claim is not recognizable in a second or successive § 2255 motion because Bailey was not a new constitutional law); Triestman, 124 F.3d at 372 (same); Dorsainvil, 119 F.3d at 251 (same); In re Blackshire, 98 f.3d 1293, 1294

(11th Cir. 1996)(Bailey announced only a new statutory interpretation, not a new rule of constitutional law and, therefore, not recognizable in a second or successive motion.

43)    Petitioner   contends that just like in Davenport, Triestman, and Dorsainvil he could not obtain review of his viable Booker claim during his direct appeal, initial § 2255 motion, and second or successive § 2255 motion.  This is because Booker was handed down after his direct appeal, initial § 2255 motion, and could not obtain a review of his Booker claim through second or successive § 2255 motion, because Booker was not a new rule of constitutional law made retroactive by the Supreme Court.  Petitioner   has pleaded that his sentence was enhanced in violation of the Fifth and Sixth Amendments as outlined in Booker. That the determination of drug amount used to sentence him by the sentencing judge, sitting alone, using preponderance of the evidence standard as opposed to the jury beyond a reasonable doubt standard constitutes a fundamental defect which inherently results in a complete miscarriage of justice.  That his sentence in excess of twenty(20) years under 21 U.S.C. § 841(b)(1)(C), the maximum sentence that is prescribed when the drug amount is not charged in the indictment, proved and decided by the jury beyond a reasonable doubt constitutes a fundamental defect which inherently results in a complete miscarriage of justice. Therefore, § 2255 is inadequate or ineffective test of the legality of  Petitioner's  sentence under Booker.

Therefore, just like in Davenport, Triestman, and Dorsainvil this Court has jurisdiction under § 2255's "savings clause" to hear and determine the merit of  Petitioner's  Booker claim.

38

_Id._  _See also_ _Wofford_, 177 F.3d at 1244-45 (holding that the only sentencing claims that may be covered by the savings clause are those based upon retroactively applicable Supreme Court decison overturning circuit precedent"); _In re Davenport_, 147 F.3d at 509 (noting that §2241 relief may be available to challenge a conviction or sentence in order that the prisoner "cannot complain that the limitations in [section] 2255 suspended whatever constitutional right he might have had, under the savings clause or conceivably under the due process clause, to be allowed to seek habeas corpus").

CONCLUSION

Based on all the reasons set forth herein, Petitioner requests:

1.  That the Honorable Court takes jurisdiction to entertain, rule on the merits of this matter.

2.  That the Honorable Court issue an order granting Petitioner a new sentencing hearing.

3.  And to grant Petitioner other and further relief as the Honorable Court may deem proper and just.

Dated: March ⏐ , 2006

Respectfully Submitted

_Andrew Lewis Wilson_
-Andrew Lewis Wilson
#09385-002

Federal Correctional Institution
PMB 1000
Talladega, Alabama 35160

39

## VERIFICATION

I hereby certify, under the penalty of perjury, that I am the Petitoner in this matter; that I have read the foregoing petition for Writ of Habeas Corpus; and that the facts related therein are true and correct to the best of my knowledge, information, and belief.

Dated:  March ⎸ , 2006

_Andrew L. Wilson_ (signature)
Andrew L. Wilson

## CERTIFICATE OF FILING

Pursuant to the principles of <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988), as construed in case law such as <u>Garvey v. Vaugh</u>, 993 F.2d 776, 781-83 (11th Cir. 1993), the attached motion for a writ of habeas corpus was filed with this Court on this date by depositing original and two copies of the same into the prison mail collection box, first class postage affixed and addressed to the Clerk of this Court as follows on this ⎸ day of March, 2006.

> Debra P. Hackett
> Office of The Clerk
> Post Office Box  711
> Montgomery, Alabama 36101-0711

I have read the foregoing and state that the facts are set forth upon personal knowledge and are true and correct to the best of Petitioner's belief.

_Andrew L. Wilson_ (signature)
Andrew L. Wilson
09385-002
FCI-PMB 1000
Talladega, AL 35160

40